IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARIO RENE LOPEZ          )
                                   )
       Petitioner,          )
                                   )
       v.               )      Civil Action No. 1:23-cv-68 (RDA/IDD)
                                   )
JOHN DOE, SUPERINTENDENT,    )
CAROLINE DETENTION FACILITY,    )
BOWLING GREEN, VIRGINIA, *et al.*,  )
                                   )
       Respondents.     )

## **ORDER**

This matter comes before the Court on Respondents' Motion to Dismiss.  Dkt. 12.  Respondents (who the Court also refers to as the government) seek to dismiss Petitioner Mario Rene Lopez's Petition for a Writ of Habeas Corpus, Dkt. 1, as amended by his Supplemental Pleading, Dkt. 10.  This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).  This matter has been fully briefed and is now ripe for disposition.  Having considered the Motion, along with Respondents' Memorandum in Support (Dkt. 13), Petitioner's Memorandum in Opposition, Dkt. 20, Respondents' Reply Brief, Dkt. 22, and the parties' supplemental briefs (Dkt. Nos. 26; 28), this Court GRANTS-IN-PART and DENIES-IN-PART Respondents' Motion for the reasons that follow.

# I. BACKGROUND

## A. Factual Background[1]

Mario Rene Lopez emigrated to the United States from El Salvador.  Mr. Lopez was born in El Salvador on February 2, 1981.  Dkt. 1 (Habeas Petition) ¶ 9.  He was born out of wedlock, and his parents never married one another.  *Id.* ¶¶ 9-10.  However, Mr. Lopez's father was listed on his birth certificate.  *Id.* ¶ 9.  Mr. Lopez came to the United States in 1992, when he was eleven years old, and he was admitted as a lawful permanent resident at that time.  *Id.* ¶ 11.  His mother also entered as a permanent resident and eventually naturalized as a United States citizen on January 30, 1998.  *Id.* ¶ 12.

When Mr. Lopez was in his early 20s, he got into some legal trouble.  He was twice convicted of drug crimes: first, in October of 2004, he was convicted of Possession of a Schedule I or II Drug pursuant to Va. Code § 18.2-250, and second, in February of 2005, he was convicted of Possession of a Controlled Drug with Intent to Distribute under Va. Code § 18.2-248.  *Id.* ¶ 13. He served seven years in prison for those convictions.  *Id.* ¶ 14.  Since then, he has not been convicted of any crimes.  *Id.*

Some civil immigration issues stemmed from his drug convictions.  While his sentence was winding up in 2011, immigration officers visited him in prison three times.  *Id.* ¶ 15. Ultimately, they decided "not to deport Mr. Lopez because they determined that he derived citizenship from his mother" under what was formerly 8 U.S.C. § 1432(a) (1998).  *Id.*

---

[1] In evaluating a Motion to Dismiss a habeas petition, the Court accepts all facts set forth in the Petition as true, employing the familiar Federal Rule of Civil Procedure 12(b)(6) standard. *Conaway v. Polk*, 453 F.3d 567, 576 n.9 (4th Cir. 2006); *Long v. Deep Meadow Correctional Ctr.*, No. 3:18-cv-49, 2018 WL 3427644, at *1 n.1 (E.D. Va. July 16, 2018).

Armed with that knowledge, Mr. Lopez tried to formally become an American citizen. He filed Form N-600, the Application for a Certificate of Citizenship. *Id.* ¶ 16. Alongside that application, he "included documentation showing that he acquired citizenship through his mother in 1998 when she naturalized." *Id.* The basis for that application was the former 8 U.S.C. § 1432(a)(3), which purportedly grants "automatic derivative citizenship" to out-of-wedlock children in certain situations. *Id.* Mr. Lopez believed that he met all of the criteria set forth in the statute. *Id.*[2] However, Mr. Lopez's N-600 application was denied on June 28, 2018. *Id.* ¶ 17.[3]

Eventually, ICE began the process of deporting Mr. Lopez. Because he was convicted of a controlled substance and drug trafficking offense after he was admitted as a permanent resident, ICE charged him with deportability. *Id.* ¶ 20. In his deportation proceedings, Mr. Lopez raised the same arguments that undergirded his N-600 application along with new arguments under the Convention Against Torture, but the immigration judge reviewing his case did not find those to be persuasive. *Id.* ¶¶ 21-26. As a result, in September of 2018, the judge ordered that Mr. Lopez should be removed to El Salvador. *Id.* ¶ 26. Mr. Lopez appealed that decision to the Board of Immigration Appeals, which affirmed the immigration judge's findings in part and remanded for further analysis. *Id.* ¶ 27. The immigration judge entered a new decision one month later (in November 2022) "without any further proceedings." *Id.* ¶ 28. Mr. Lopez was then detained in January 2023, and ICE began the process of deporting him. *Id.* ¶ 29. Mr. Lopez filed a motion to reopen removal proceedings, *id.* ¶ 30, which was eventually granted in January of 2023, Dkt. 10 ¶

---

[2] The Court does not treat Petitioner's recitation of the statute's criteria as a factual allegation it must accept as true. Instead, that is a legal conclusion that the Court need not accept as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] The Court does not recount the reasons that USCIS gave for denying Mr. Lopez's N-600 application, Pet. ¶¶ 17-19, as those legal conclusions are irrelevant to the motion at hand.

3

2.[4]  As a result, Petitioner is not facing imminent deportation, and he is not subject to a final order of removal.  *See id.* ¶ 3 (noting that Petitioner cannot be deported until the entire removal order process and subsequent appeal to the BIA have been completed).

B. Procedural Background

Petitioner filed an Emergency Petition for a Writ of Habeas Corpus and a Motion for an Order to Show Cause on January 13, 2023.  Dkt. Nos. 1; 1-1.  He subsequently filed an Emergency Motion for a Temporary Restraining Order or a Preliminary Injunction on January 17, 2023, Dkt. 3.  The next day, Petitioner moved to withdraw his motions for a show cause order and a preliminary injunction, Dkt. 7, and moved for leave to file supplemental pleadings, Dkt. 8.  This Court granted those Motions on January 25, 2023, Dkt. 9, and Petitioner filed his supplemental pleadings on February 3, 2023.

This Court then directed service of the Habeas Petition on Respondents on March 13, 2023, Dkt. 15, and Respondents filed a Motion to Dismiss for Lack of Jurisdiction with a supporting Memorandum on March 14, 2023, Dkt. Nos. 12; 13.  After Magistrate Judge Davis extended Petitioner's time to respond, Dkt. Nos. 18; 23, Petitioner filed a Memorandum in Opposition on April 4, 2023, Dkt. 20.  Respondents replied in support of their Motion on April 10, 2023.  Dkt. 22.  The Court then ordered the parties to submit briefs on the effect (if any) of *Axon Enterprise, Inc. v. F.T.C.*, 598 U.S. __, __ S. Ct. __ (2023).  Dkt. 25.  Respondents filed such a brief on April 25, 2023, and Petitioner filed his brief on May 19, 2023, Dkt. 28.

---

[4] Petitioner sought leave of Court pursuant to Rule 15(d) to supplement his pleadings, Dkt, 8, which this Court granted, Dkt. 9.  The Court thus can appropriately consider Petitioner's Supplement to his Complaint pursuant to Rule 15(d).  *See* Fed. R. Civ. P. 15(d) (providing that a court can permit a party to serve "a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Motions

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction over a lawsuit. Fed. R. Civ. P. 12(b)(1).   In essence, such a motion contests the "court's authority to hear the matter brought by a complaint."   *Atlantic Cas. Ins. Co. v. United Tours, Inc.*, Case No. 3:12-cv-680, 2013 WL 2389887, at *1 (E.D. Va. May 30, 2013).

There are two types of 12(b)(1) motions: facial challenges and factual challenges.   In a facial challenge, the defendant argues "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based."   *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). On the other hand, a factual challenge contends that "the jurisdictional allegations are not true." *Id.*   In evaluating a facial challenge, a court takes the alleged jurisdictional facts as true and evaluates whether those facts are sufficient to establish subject matter jurisdiction.   *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).   In evaluating a factual challenge, the court resolves disputed jurisdictional facts and does not apply the "presumption of truthfulness normally accorded [to] a complaint's allegations."   *Id.*

A plaintiff bears the burden to demonstrate that subject matter jurisdiction exists.   *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).   A court should only grant a 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."   *Richmond, Fredericksburg, & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## III. ANALYSIS

Following Petitioner's modification of his claims, three remain: (1) Count One, which seeks a declaratory judgment that "Mr. Lopez is a United States citizen" and asks this Court to

"order USCIS to issue a certificate of citizenship," Pet. at 10; (2) Count Two, which brings a Due Process Claim challenging ICE's detention of Petitioner, because "ICE cannot detain American citizens," *id.* at 13; and (3) Count Five, which states that interpreting "8 U.S.C 1252(g) to bar judicial review violates the Suspension Clause," *id.* at 18.   *See also* Dkt. 10 (Petitioner's supplemental pleading, withdrawing Counts Three and Four).

Count Five is not a claim for relief.  In that Count, Petitioner explains why the Suspension Clause is applicable to him and bars this Court from concluding that 8 U.S.C. § 1252(g) strips it of jurisdiction.  Pet. at 18-20.  That is not a claim, but a legal argument as to why this Court has jurisdiction over his claims.  Accordingly, the Court will dismiss Count Five.  *See Dickens v. Dep't of Consumer and Reg. Aff.*, 298 F. App'x 2, 3 (D.C. Cir. 2008) (holding that a legal argument was not a "cause of action in its own right" but a theory of liability); *Harris v. United States*, No. 21-cv-24262, 2022 WL 18936567, at *1 (S.D. Fla. Mar. 23, 2022) (dismissing count that was "not a claim for relief" but legal argument).

As a result, two counts remain.  First, Count One, which asks this Court to declare that Mr. Lopez is a United States citizen, which the Court refers to as the "citizenship claim."  Second, Count Two, which challenges Mr. Lopez's detention by ICE, which the Court refers to as the "detention claim."

### A. Subject Matter Jurisdiction

Respondents argue that this Court does not have jurisdiction over those two claims for several reasons.  First, Respondents argue that this Court lacks jurisdiction pursuant to 8 U.S.C. § 1252(b)(9), as set forth in *Johnson v. Whitehead*, 647 F.3d 120 (4th Cir. 2011).  Dkt. 13 at 10-15.  Second, Respondents argue that 8 U.S.C. § 1252(g) similarly divests this Court of jurisdiction.  *Id.* at 15-16.  Third, Respondents believe that 8 U.S.C. § 1503 bars jurisdiction here for two reasons:

(1) Petitioner did not administratively exhaust his citizenship claim; and (2) section 1503(a), like sections 1252(b)(9) and 1252(g), strips this Court of jurisdiction.  Dkt. 22 at 7-8.[5]  Finally, Respondents claim that the Suspension Clause cannot save Petitioner here, as he has an adequate substitute procedure to his habeas claim.  Dkt. 13 at 14.

Petitioner, of course, disagrees.  He first contends that the facts alleged show that he is a citizen of the United States.  Dkt. 20 at 10-13.  He further argues that the law did not require him to appeal the initial denial of Form N-600 before bringing suit in this Court.  *Id.* at 13-15.  As to Respondents' argument that section 1252 strips this Court of jurisdiction, Petitioner avers that the statute "does not limit the Court's jurisdiction to review legal and constitutional questions," and that the statute does not apply to him in any event.  *Id.* at 15-19.  Moreover, according to Petitioner, even if the relevant provisions in section 1252 *did* apply, he believes the Suspension Clause of the Constitution renders the jurisdiction-stripping sections of the statute unconstitutional as applied to him, meaning that this Court should still exercise jurisdiction.

### 1.  8 U.S.C. § 1252

There are two sections of 8 U.S.C. § 1252 that may be relevant here, and both purport to strip district courts of jurisdiction over certain immigration cases.  First, 8 U.S.C § 1252(b)(9), known as the "zipper clause," which states:

---

[5] Respondents only advanced their argument that section 1503 bars Petitioner's claim in their reply brief.  Normally, courts do not consider arguments raised for the first time in a reply brief.  *Reynolds v. Pionear, LLC*, No. 3:15-cv-209, 2016 WL 1248866, at *7 n.15 (E.D. Va. Mar. 25, 2016).  However, because that argument concerns an issue of subject matter jurisdiction and thus the Court's "very power to hear [this] case[,]" this Court has an "independent obligation" to address that argument regarding subject matter jurisdiction.  *Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc.*, 734 F.3d 296, 302 (4th Cir. 2013).

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Second, 8 U.S.C § 1252(g):

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Respondents claim that both of these statutes independently strip the Court of jurisdiction in this case.

The language of those sections of 8 U.S.C. § 1252 is straightforward, and the Supreme Court has been quite clear in interpreting them. Section 1252(g) applies "only to three discrete actions that the Attorney General may take: [his] 'decision or action to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Section 1252(b)(9) has been similarly interpreted; in fact, the Supreme Court recently approvingly cited the *Reno* court's description of the scope of 1252(g) in rejecting a more "expansive" interpretation of § 1252(b)(9). *See Jennings v. Rodriguez*, 583 U.S. __, 138 S. Ct. 830, 840-41 (2018) (citing *Reno* and finding that the Supreme Court had jurisdiction) (cleaned up). And so both sections have the same effect, albeit a little differently: section 1252(g) "strips all federal jurisdiction from claims arising from the three enumerated actions of the Attorney General[,]" *Mapoy v. Carroll*, 185 F.3d 224, 230 (4th Cir. 1999), while section 1252(b)(9) funnels all "issues arising from a final order of removal" to the immigration courts and

provides for "direct review in the courts of appeals," *Nasrallah v. Barr*, 590 U.S. __, 140 S. Ct. 1683, 1690 (2020).

With that in mind, this Court starts, as it must, with the plain language of the statute. *Williams v. Taylor*, 529 U.S. 420, 431 (2000). The key term in both sections is the word "arising": § 1252(g) precludes judicial review of all questions "arising" from the three listed actions of the Attorney General, while § 1252(b)(9) does not allow for district court review of issues "arising" from removal. The word "arising" has a plain meaning that conveys that an issue only arises from an action when it originates with that action's occurrence. *See Arise*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "arise" as "to originate; to stem (from)"); *Arise*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://perma.cc/MR2F-WA8Z (defining "arise" as "to *begin* to occur or exist; to come into being or to attention" and "to *originate*" from a source (emphasis added)); *Arise*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1991) (similar).[6] And when courts have interpreted the word "arise" in other contexts, the meaning they ascribe to it comports with those dictionary definitions. *See, e.g.*, *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382 (2004) (finding that the "common usage" of the word "arise" means to "come into being; originate"); *Admiral Ins. Co. v. G4S Youth Servs.*, 634 F. Supp. 2d 605, 614 (E.D. Va. 2009) ("The word 'arise' means to originate from a source or come into being.").[7] That meaning reveals that neither provision applies to the case at hand.

_____

[6] It is well-established that dictionaries are frequently relied upon to determine the plain meaning of words in a statute. *See, e.g.*, *United States v. Ward*, 982 F.3d 364, 370 (4th Cir. 2020) (relying on dictionary definitions).

[7] *See also Bd. of Trustees of Automotive Machinists Pension Trust v. Peninsula Truck Lines, Inc.*, No. C21-64 MJP, 2021 WL 5987019, at *3 (W.D. Wash. Dec. 17, 2021) ("[C]ases . . . have defined the term 'arise' to mean 'originating from, having its origin in, growing out of or flowing from.'" (quoting *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791 798 (9th Cir. 2017)); *FCX Solar, LLC v. FTC Solar, Inc.*, No. 6:21-cv-548, 2021 WL

Start with section 1252(b)(9), the zipper clause.  That clause precludes district court review of "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States."  8 U.S.C. § 1252(b)(9).  Applying the straightforward meaning of "arise," that means this Court cannot review questions of law and fact that Mr. Lopez raises if they "came into being" or "originated" from any government "action" or "proceeding" brought to remove him.  But, as the Petition alleges, the question of whether Mr. Lopez is a citizen of a United States did *not* originate with a government removal action or proceeding.  Instead, that question originated in 2011, when ICE officers "visited Mr. Lopez" and decided "not to deport [him] because they determined that he derived citizenship from his mother under former 8 U.S.C. § 1432(a)."  Pet. ¶ 15.  And so, when ICE initiated the instant removal proceedings against Mr. Lopez, the "question" of whether he is a citizen of the United States had already once been resolved; that question is now being re-evaluated.  Accordingly, section 1252(b)(9) does not apply.

The same logic applies to section 1252(g).  That section deprives district court jurisdiction from claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C § 1252(g).  Again, Mr. Lopez's citizenship claim does not "arise" from the currently-pending removal action or any other "decision or action" by the Attorney General under the statute; instead, as alleged in the Petition, it originated in 2011, when ICE evaluated his citizenship.  Thus, § 1252(g) does not apply here, either.

---

4953912, at *6 (E.D. Tex. Oct. 25, 2021) ("To 'arise from means 'to originate from a specific source' and is usually interpreted as 'indicating a causal connection.'"); *Goodyear Tire & Rubber Co. v. G4S Secure Sol's (USA), Inc.*, No. 5:11-cv-1170, 2013 WL 256938, at *6 (N.D. Ohio Jan. 23, 2013) ("The plain meaning of the word 'arise' means 'to come about.'").

Respondents' efforts to fight the plain meaning of both statutes is unavailing.  In their reply, they argue that Petitioner's reading of the statute "effectively rewrites" section 1259(b)(9), claiming that his reading would impliedly insert the word "first" after the word "arising."  Dkt. 22 at 5-6.  But it is Respondents who attempt to rewrite the statute.  They ignore that the plain meaning of the word "arising" inherently suggests that the issues that Congress divested from this Court must originate in a removal proceeding (or other official actions taken by the Attorney General).  There is no "good reason" to believe that Congress intended a different meaning, and so this Court "must give effect to [Congress's] plain language."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983).

Respondents' reliance on *Johnson v. Whitehead*, 647 F.3d 120 (4th Cir. 2011), is also misplaced, as *Johnson* is analytically different.  As the government acknowledges, in *Johnson*, the citizenship question first came about in 1996 when the "government sought to deport the petitioner" as a result of his criminal convictions.  Dkt. 13 (citing *Johnson*, 647 F.3d at 123).  The petitioner thus asserted that he was a United States citizen because he believed an immigration judge declared it so "in a 1998 removal proceeding."  *Johnson*, 647 F.3d at 123.  But the Fourth Circuit found that "because the issue of Johnson's citizenship arose *in his removal proceedings*, his petition for review . . . is the proper means of seeking redress."  *Id.* at 124 (emphasis added).  That is simply not the case here, as the Petition plausibly alleges that the issue of Mr. Lopez's citizenship arose (*i.e.* originated) when ICE officers visited him in 2011—without any apparent connection to a removal action or proceeding.  As a result, *Johnson* is not readily applicable to this

case, as the "legal question[s] in this case" do not "arise from [a removal action]." *Jennings*, 138 S. Ct. at 841 n.3.[8]

Moreover, *Johnson* is clearly not relevant to Petitioner's detention claim.  The petitioner in *Johnson* only challenged the immigration court's finding that he was not a citizen.  *Johnson*, 647 F.3d at 124.  He did not simultaneously raise an unlawful detention claim.  As a result, "*Johnson* did not directly decide whether a claim of unlawful detention, based on an underlying citizenship claim, 'arises from' removal proceedings for § 1292(b) purposes."  *Duncan v. Kavanagh*, 439 F. Supp. 3d 576, 584 (D. Md. 2020).

This reading of both statutory provisions is consistent with the Supreme Court's consistent narrow interpretation of the Immigration and Nationality Act.  In *Reno*, the Supreme Court rejected a broad reading of section 1252(g) that both the government and the respondents advanced and chose a narrower route in applying it to only three actions that the Executive takes vis-à-vis immigration.  525 U.S. at 477-82.  The Court took a similar path in *Jennings* in interpreting § 1252(b)(9).  138 S. Ct. at 840.  Moreover, in *Jennings*, the Court *explicitly* rejected an expansive interpretation of the term "arise from."  It recognized that an "extreme" interpretation of the phrase "arise from" could sweep in virtually all legal and factual questions tangentially related to a detained alien.  *Id.* at 840-41.  But the Court rejected that interpretation and found that it had jurisdiction.  *Id.* at 841.  Thus, it is similarly consistent to interpret "arise from" in the natural, narrower way, rather than in the expansive way Respondents urge.  *Cf. Rios-Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 398-99 (5th Cir. 2007) (interpreting section 1503 and concluding

---

[8] Respondents also cite a plethora of cases that "follow *Johnson*" in dismissing habeas petitions for "lack of subject-matter jurisdiction."  Dkt. 13 at 12 & n.7.  But none of those cases contain the same unique factual circumstances presented here and are accordingly inapposite.

that the word "arose" in that statute "focuses on the proceeding in which the particular claim to citizenship *originates*, not the proceeding in which it is being pursued").

Simply put, on their face, neither 8 U.S.C. § 1252(g) nor 8 U.S.C. § 1252(b)(9) deprive this Court of Petitioner's detention or citizenship claims.

### 2.  8 U.S.C. § 1503

Respondents contend that even if § 1252 does not apply here, 8 U.S.C. 1503(a) deprives this Court of jurisdiction for two reasons.  First, because 8 U.S.C. § 1503(a) requires administrative exhaustion of an application pursuant to Form N-600, which Petitioner failed to do.  And second, because that section, like 8 U.S.C. § 1252, divests this Court of jurisdiction.

The Court agrees with Respondents that 8 U.S.C. § 1503(a) bars Petitioner's citizenship claim twice over.  First, Petitioner cannot seek a declaration that he is a citizen of the United States under section 1503(a) because the statute requires administrative exhaustion.  Specifically, the statute only permits an action after a "final administrative denial," which the Fourth Circuit has interpreted to require an appeal of the denial of Form N-600.  *Johnson*, 647 F.3d at 125 (citing 8 U.S.C. § 1503(a)).[9]  There is no indication that Petitioner has exhausted his administrative remedies, which is sufficient to preclude review in this Court.  Second, and independently, the statute denies a district court jurisdiction over citizenship claims if such a claim is "in issue in any [] removal proceeding."  8 U.S.C. § 1503(a).  Undoubtedly, Petitioner's citizenship claim is in issue in his removal proceeding; he alleges as much throughout his Petition and Supplement.  *E.g.* Dkt. 1 ¶¶ 3, 30 (referring to the currently pending removal proceeding, in which Mr. Lopez makes

---

[9] In many cases, exhaustion of administrative remedies is an affirmative defense that cannot be considered unless facts sufficient to rule on the defense appear on the face of the Complaint. *L.N.P. v. Kijakazi*, 64 F.4th 577, 586 (4th Cir. 2023).  However, because exhaustion in this case is a matter of jurisdiction, the Court can—and must—consider that argument.

a citizenship claim); Dkt. 10 ¶ 2 (stating that the immigration court granted Petitioner's motion to reopen). Because 8 U.S.C. § 1503(a) precludes this Court from addressing Petitioner's claim asking this Court to declare him a citizen of the United States, the Court must dismiss Count I, the citizenship claim.

To be clear, 8 U.S.C. § 1503(a) *only* applies to Petitioner's citizenship claim; it does not apply to his detention claim. The title of the section is "proceedings for declaration of United States nationality[,]" and the section discusses actions instituted that seek a "judgment [that declares the petitioner] to be a national of the United States." 8 U.S.C. § 1503(a). Under the plain language of the statute, 8 U.S.C. § 1503(a) explicitly applies to claims that seek a determination that a petitioner is an American citizen, and so the Court will not extend its reach beyond that scope. *See Almonte v. Holder*, 380 F. App'x 351, 351-52 (4th Cir. 2010) (applying statute when plaintiff sought declaration that he was a U.S. national); *see also Paye v. Napolitano*, No. 1:9-cv-1589, 2010 WL 5111380, at *2 (M.D. Pa. Dec. 9, 2010) (describing 8 U.S.C. § 1503(a) as a statute that "allows a petitioner to seek a declaration of citizenship in federal court"); *Tavera v. Harley-Bell*, No. 9-cv-299, 2010 WL 1308800, at *3 (S.D. Tex. Mar. 31, 2010) (similar).

However, the Court must still evaluate whether the fact that 8 U.S.C. § 1503(a) precludes Petitioner's citizenship claim has a knock-on effect on this Court's jurisdiction over Petitioner's detention claim. Mr. Lopez's detention claim is that "ICE cannot detain American citizens." Dkt. 1 at 13. Necessarily, to resolve that claim, this Court would have to decide whether Mr. Lopez is indeed an American citizen, as the underlying basis for his claim is that he *is* an American citizen and cannot be detained by ICE. Thus, any resolution of the detention claim is substantially intertwined with his citizenship claim, which, under section 1503, must proceed solely in the immigration court. As a result, this Court must determine whether 1503(a)'s stripping of the

citizenship claim takes the detention claim with it.  *See Duncan*, 439 F. Supp. 3d at 585-86 (evaluating detention claim under § 1252 jurisdiction-stripping provisions because the claim that he was unlawfully detained as a U.S. citizen turned on the underlying citizenship claim); *Cantu v. McAleenan*, No. 4:18-cv-438, 2019 WL 13191344, at *5 (S.D. Tex. Sep. 24, 2019) (applying portion of § 1252 to plaintiff's "unlawful detention" claim because it "hinge[d] on the assertion that he is a U.S. citizen").

This is not an issue that the Fourth Circuit has addressed, but a district court within the Fourth Circuit has.  In *Duncan v. Kavanagh*, 439 F. Supp. 3d 576, the Maryland district court concluded that an unlawful detention claim that was based on an assertion that the petitioner was an American citizen rose and fell with the jurisdiction-stripping provisions in section 1252 (which applied in that case).  Relying on Ninth Circuit case law, the court held that the "substance of the relief" the petitioner sought in both the citizenship and detention claims was a "finding of non-removability on the basis of U.S. citizenship." *Duncan*, 439 F. Supp. 3d at 586.  The *Duncan* court recognized that the Ninth Circuit case it was primarily relying on—*Flores-Torres v. Mukasey*, 548 F.3d 708 (9th Cir. 2008)—held that district courts have jurisdiction over challenges to "detention based on a claim to U.S. citizenship" when they are made before a "final order of removal." *Duncan*, 439 F. Supp. 3d at 585.  However, citing "subsequent developments in Ninth Circuit case law" that it claimed "call[ed] the continued validity of [the *Flores-Torres*] holding into question," the *Duncan* court concluded that the jurisdiction-stripping provisions of section 1252 applied to citizenship and detention claims alike. *Id.* at 585-86.

While this Court agrees with the *Duncan* court that *Flores-Torres* is readily applicable here, it does not agree with the *Duncan* court's characterization of the state of the relevant law in the Ninth Circuit.  The *Duncan* court posited that the Ninth Circuit had cabined *Flores-Torres* to

situations where petitioners brought claims that were wholly "collateral to, or independent of" the removal process. *Duncan*, 439 F. Supp. 3d at 585 (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016)). But *Flores-Torres* addressed the issue of detention claims intertwined with citizenship claims pending in removal proceedings head-on. The Ninth Circuit explicitly rejected the government's argument that "because the question of its authority to detain [petitioner] is intertwined with the citizenship claim at issue in his removal proceedings, Torres must wait until the conclusion of those proceedings before receiving a judicial determination as to whether he is a citizen and as to whether his detention by ICE is lawful." *Flores-Torres*, 548 F.3d at 711. The government's argument, according to the Ninth Circuit, was entirely at odds with the "plain language of § 1252" and the "well-established principle" that courts do not find "habeas review foreclosed" absent a "particularly clear statement" from Congress. *Id.* at 712 (quoting *Demore v. Kim*, 538 U.S. 510, 517 (2003)). And the *Flores-Torres* court highlighted the fact that the petitioner was claiming to be a United States citizen unlawfully detained under the INA. *Id.* Its holding was explicit: "Congress has never enacted any statute that would deprive a citizen of his right to a judicial determination of the legality of his detention simply because his case is pending before an administrative agency." *Id.*

What's more, *Flores-Torres* is on all fours with this case. There, like here, the petitioner was "born out of wedlock," moved to the United States from El Salvador with his mother (who eventually became a naturalized citizen), and himself became a lawful permanent resident. *Id.* at 709. And again, like here, the petitioner was convicted of a felony and then charged with removability. *Id.* Finally, like Mr. Lopez, petitioner was not subject to a final order of removal and challenged his removability, which depended on "whether or not his father's paternity ha[d] been established by legitimization under El Salvadoran law." *Id.* at 709-10. The only difference

16

here makes Mr. Lopez's constitutional claims *more* substantial, as he has an extra layer: years before instituting his removal proceedings, ICE visited him and apparently determined he was likely a United States citizen.  Like many other courts, this Court does not see any reason to depart from the well-reasoned opinion in *Flores-Torres*.  *See, e.g.*, *Olopade v. Att'y Gen. of the United States*, 565 F. App'x 71, 73 (3d Cir. 2014) (citing *Flores-Torres* and concluding that the REAL ID Act "did not specifically preclude habeas review over claims of citizenship raised outside of the context of a challenge to a removal order"); *Medina v. Dep't of Homeland Sec.*, No. C17-218-RSM-JPD, 2017 WL 2954719 at *11-15 (W.D. Wash. Mar. 14, 2017) (citing *Flores-Torres* and holding that the Court had jurisdiction over habeas petitioner's "arrest and detention claims");[10] *Sandoval-Vela v. Napolitano*, No. 10-cv-59, 2010 WL 364221, at *6 & n.3 (S.D. Cal. Jan. 26, 2010) (citing *Flores-Torres* and holding that the court had jurisdiction over claim of unlawful detention).  Indeed, the Fourth Circuit recently approvingly cited *Flores-Torres* in holding that detention challenges "must be brought pursuant to a habeas corpus petition."  *Gudiel Polanco v. Garland*, 839 F. App'x 804 (Mem) (4th Cir. Mar. 17, 2021).  Thus, the Court finds that while section 1503(a) strips this Court of jurisdiction over Mr. Lopez's citizenship claim, that jurisdiction-stripping does not take his detention claim with it, despite the fact that they involve the same underlying question—whether Mr. Lopez is a United States citizen.[11]

---

[10] The district court adopted the *Medina* R&R in part, 2017 WL 1101370, but did not have a chance to address the specific arguments relating to jurisdiction over detention claims, as petitioner filed a Second Amended Complaint, mooting the government's motion to dismiss.

[11] For the same reasons, even *if* either 8 U.S.C § 1252(b)(9) or 8 U.S.C § 1252(g) applied to Mr. Lopez (and thus stripped the Court of jurisdiction over his citizenship claim), this Court would still have jurisdiction over the detention claim pursuant to the reasoning in *Flores-Torres*.

### 3. The Suspension Clause

Even if 8 USC §§ 1252 or 1503(a) stripped this Court of jurisdiction over Petitioner's detention claim, the Suspension Clause would render such stripping unconstitutional as applied to Mr. Lopez.

The language of the Suspension Clause is absolute. It reads: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art 1, § 9, cl. 2. The writ of habeas corpus is "the only common law writ to be explicitly mentioned" in the Constitution. *Hamdi v. Rumsfeld*, 542 U.S. 507, 558 (2004) (Scalia, J., dissenting). Extinguishing that writ is an "exercise of extraordinary authority," and can only be done "because of a crisis." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 650 (1952) (Jackson, J., concurring). Neither party argues that there is currently a "rebellion or invasion," nor could they. So, any suspension of the writ of habeas in this case would violate the Suspension Clause and thus be unconstitutional.

The question, then, is whether the writ of habeas corpus would be suspended if the Court applies the jurisdiction-stripping provisions as Respondents urge. The parties agree that the framework that guides how to answer that question comes from *Boumediene v. Bush*, 553 U.S. 723 (2008). First, this Court asks whether Mr. Lopez should not be allowed to invoke the Suspension Clause "due to some attribute . . . or to the circumstances surrounding his arrest or detention." *Joshua M. v. Barr*, 439 F. Supp. 3d 632, 671 (E.D. Va. 2020) (quoting *Osorio-Martinez v. Att'y Gen. of the United States of America*, 893 F.3d 153, 166 (3d Cir. 2018)); *Boumediene*, 553 U.S. at 739. Second, the Court asks whether there is an "adequate and effective" substitute for habeas to "test the legality of the [Petitioner]'s detention (or removal)." *Id.*

18

Three factors are relevant to the inquiry of whether Petitioner should be allowed to invoke the Suspension Clause. "(1) the citizenship and status of [Mr. Lopez] and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles in resolving [Mr. Lopez's] entitlement to the writ." *Boumediene*, 553 U.S. at 766; *Joshua M*, 439 F. Supp. 3d at 671-72 (applying these three factors at step one). *Boumediene* included those factors to address situations where prisoners of war invoke habeas corpus even though they have never been in the United States, were foreign citizens, and were captured, imprisoned, and tried outside of the United States. *See Boumediene*, 553 U.S. at 766-77 (citing *Johnson v. Eisentrager*, 339 U.S. 763, 777 (1950)). For those sorts of petitioners, the application of habeas corpus is dubious. That is not the case here, and Respondents do not appear to contest that Mr. Lopez should be allowed to invoke the Suspension Clause.

The facts alleged in the Petition confirm that Mr. Lopez is entitled to invoke the Suspension Clause. First, he has "longstanding ties" to the United States, as he has lived here since 1992 after arriving legally. *Siahaan v. Madrigal*, No. PWG-20-2618, 2020 WL 5893638, at *7 (D. Md. Oct. 5, 2020); Pet. ¶ 11. While Mr. Lopez does have two drug convictions, the Court is convinced that his longstanding residence in this country for over three decades, with no other criminal convictions, is sufficient to put him within "the class of persons who are a part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community," and thus the first factor weighs in favor of the Suspension Clause applying here. *Joshua M.*, 439 F. Supp. 3d at 672 (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)). Second, Mr. Lopez was apprehended in "Virginia in early January 2023" and is still being detained in Virginia. Pet. ¶ 29. The fact that he was detained in

the United States tilts the second factor in favor of the Suspension Clause being available to Mr.

Lopez.  *Joshua M.*, 439 F. Supp. 3d at 672; *see Budiono v. Barr*, No. 4:19-cv-1635, 2019 WL

5569182, at *4 (M.D. Pa. Oct. 29, 2019) (the fact that the petitioner was apprehended and detained

in the United States was sufficient for second factor to weigh in favor of petitioner invoking the

Suspension Clause).  Finally, there do not appear to be any "practical obstacles to resolving the

writ" here "other than the kind of 'incremental expenditure of resources'" that is "not dispositive

to the question of granting the writ."  *Joshua M.*, 439 F. Supp. 3d at 672 (quoting *Boumediene*,

553 U.S. at 769).  Accordingly, all three factors indicate that the first step of the *Boumediene* test

is satisfied.

Next, the Court must consider the alternatives to a habeas petition.  "[T]he substitution of

a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's

detention does not constitute a suspension of the writ of habeas corpus."  *Swain v. Pressley*, 430

U.S. 372, 381 (1977).  Specifically, if Mr. Lopez's underlying claims can adequately be addressed

in some context other than a habeas corpus petition, the writ has not been impermissibly

extinguished.  *Ahqar v. Hott*, No. 1:19-cv-716, 2019 WL 2712276, at *5 (E.D. Va. June 5, 2016).

Mr. Lopez's citizenship claim can be adequately addressed through other avenues.  Many

district courts within the Fourth Circuit have held that the review process provided for in section

1252(g)—which concludes with review in the federal appellate courts—is an adequate substitute

for a habeas petition that seeks to challenge the legality of removal.  *See, e.g.*, *id.* at *5 (holding

that petitioner's appeal rights following the immigration court's denial of his to reopen was a

sufficient alternative); *Duncan*, 439 F. Supp. 3d at 586 (same).  Several courts of appeals have

held the same.  *See, e.g.*, *Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1277-79 (10th Cir. 2018)

(holding that the appeal process following an immigration court decision regarding citizenship was

adequate alternative to habeas and citing cases from the Second and Eighth Circuits); *Iasu v. Smith*, 511 F.3d 881, 888 (9th Cir. 2007) (similar). This situation is no different; the appeal procedures Mr. Lopez can pursue following the inevitable resolution by the immigration court is an adequate alternative, and thus the Suspension Clause is not implicated for his citizenship claim.

Mr. Lopez's detention claim, however, is different, and the government's own reply brief explains why. Mr. Lopez's detention claim is the quintessential claim that the Suspension Clause is directed at, as it seeks the "traditional remedy of 'simple release' from 'unlawful executive detention.'" Dkt. 22 at 12 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. __, 140 S. C.t 1959, 1970-71 (2020)). And the detention that Mr. Lopez challenges is a harm he is *currently suffering*, "before any [petitions for review] [are] ever ruled on." *Id.* That makes Mr. Lopez's detention claim much more similar to other cases where courts have invoked the Suspension Clause when petitioners were at risk of, or were contemporaneously suffering, harm absent review of their habeas petition. *See id.* (citing cases).[12]

There is no adequate alternative to Petitioner's detention claim. "The writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). That is precisely what Petitioner challenges here, and the appeals process following the immigration court's resolution of his motion to reopen is neither "adequate" nor "effective." True, the appeals process would eventually resolve his claim. But regardless of the eventual decision regarding citizenship (whether by the Fourth Circuit or an immigration court), his detention claim becomes moot on finality. For example, if he is found to be a citizen, ICE must release him; however, he would

---

[12] Respondents try to impose a standard that requires a "threat to life" before a detained, potentially removable individual can pursue a habeas petition. *Id.* at 14 There is no basis in law for such a standard.

have suffered months (or years) of unjustified and unlawful detention without any review.  It is hard to call a process that potentially results in extended unlawful detention "adequate" and "effective."  Indeed, it is anything but.

In fact, the Supreme Court has recently emphasized the importance of judicial review in situations such as this.  In *Axon Enterprise, Inc. v. Fed. Trade Comm'n*, 598 U.S. __, 143 S. Ct. 890 (2023), the Supreme Court reviewed the justiciability of claims related to the constitutionality of federal agencies.  While those claims were admittedly different, the principles affirmed there inform the Suspension Clause analysis here.  There, the plaintiff alleged that she was "being subjected to unconstitutional agency authority," which is precisely what Mr. Lopez alleges here. *Axon Enterprise*, 143 S. Ct. at 903; *see* Pet. at 13-14 (Count 2 alleging that it is unconstitutional for ICE to detain American citizens).  The Court held that such a claim was a valid allegation of a "here-and-now injury[,]" and there can be no debate that Mr. Lopez's allegations regarding his unconstitutional detainment is also a "here-and-now" injury. *Id.*  Finally, like here, the *Axon* Court emphasized that the plaintiff's claims could be heard in district court because otherwise, any review of such "constitutional claims would come too late to be meaningful." *Id.* at 904.

Because Petitioner should be allowed to invoke the Suspension Clause and there are no adequate alternatives to habeas to evaluate his detention claim, the Court finds that if the provisions of 8 U.S.C. §§ 1252 and/or 1503(a) did strip this Court of jurisdiction over his detention claim, divesting jurisdiction would be unconstitutional as applied to Mr. Lopez.  For that alternative reason, this Court can review his detention claim.

\*       \*       \*

This Court's reading of the statutory scheme, and its interplay with the Suspension Clause, is analytically sound.  Someone like Mr. Lopez—whose citizenship issue arose (and appeared to

be resolved) long before the government instituted removal proceedings—is in a far different position than an alien who is facing removal proceedings but never had the question of whether he is a citizen addressed.  And, in his detention claim, Mr. Lopez is *not* challenging the Attorney General's decisions to commence proceedings, adjudicate his case, or execute a removal order, which 8 U.S.C. §§ 1252(b)(9), (g) and 1503(a) exclusively reserve to the Executive Branch.

To be clear, this is a unique situation, as there are scant circumstances where a district court has jurisdiction to decide a citizenship question.  But they do exist.  *See, e.g.*, *Salinas Moya v. Limon*, 793 F. App'x 296 (5th Cir. 2019) (reviewing appeal from district court decision finding that plaintiff was not a citizen of the United States); *Mundo-Violante v. Kerry*, No. 5:15-cv-64, 2016 WL 3748625, at *2-4 (W.D. Va. July 8, 2016) (reviewing question of whether plaintiff was a citizen of the United States); *Martinez v. Blinken*, No. 1:18-cv-92, 2023 WL 3452063, at *1-6 (S.D. Tex. May 15, 2023) (same).[13]  And this is an extraordinary situation, as Mr. Lopez has a bona fide claim that he is a United States citizen, which carries weighty constitutional questions, as members of the Supreme Court have recognized.  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. __, 140 S. Ct. 1959, 1989 (2020) (Breyer, J., concurring) ("Could Congress . . . deny habeas review to someone ordered removed despite claiming to be a . . . U.S. citizen?"); *see generally Chin Yow v. United States*, 208 U.S. 8, 10-13 (1908) (Holmes, J.,) (directing for a writ of habeas corpus to be issued to alleged Chinese alien claiming that he was a citizen). The separation of powers and the Suspension Clause commands that the Judiciary have a role in such a situation.  This is particularly true since Mr. Lopez brings a detention claim: "even one day of

---

[13] In fact, 8 U.S.C. § 1503(a) implies that some individuals can seek a declaration of citizenship in a district court in certain circumstances.

unlawful detention is a harm recognized by the Constitution." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1085 n.4 (2d Cir. 2021).

## IV. CONCLUSION

For the reasons set forth above, this Court GRANTS-IN-PART and DENIES-IN-PART Respondents' Motion to Dismiss; and it is

FURTHER ORDERED that Counts I, III, IV, and V are DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that within seven (7) days of the date of this Memorandum Opinion and Order, each party shall file a brief, no longer than ten (10 pages), indicating whether they believe discovery is necessary or whether this matter is ripe for Summary Judgment.

IT IS SO ORDERED.

July 10, 2023
Alexandria, Virginia

_____ /s/ _____
Rossie D. Alston, Jr.
United States District Judge