IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARIO RENE LOPEZ ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 1:23-cv-68 (RDA/IDD) |
| ) | |
| JOHN DOE, SUPERINTENDENT, ) | |
| CAROLINE DETENTION FACILITY, ) | |
| BOWLING GREEN, VIRGINIA, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Petitioner's Motion to Accept a Late-Filed Motion for Summary Judgment ("Motion to Accept") (Dkt. 37), Petitioner's Motion for Summary Judgment (Dkt. 38), and Respondents' Motion for Summary Judgment (Dkt. 50).[1] This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motions together with Petitioner's Memorandum in Support (Dkt. 39), Respondents' Memorandum in Support (Dkt. 51), Respondents' Opposition Brief (Dkt. 49), Petitioner's Opposition Brief (Dkt. 53), Respondents' Reply (Dkt. 54) and Petitioner's Notices (Dkt. Nos. 56 and 57), this Court GRANTS the Motion to Accept, DENIES Petitioner's Motion for Summary Judgment, and GRANTS Respondents' Motion for Summary Judgment for the reasons that follow.

---

[1] Respondents here are Attorney General Merrick B. Garland, a John Doe Superintendent of the Caroline Detention Facility, Kimberly Zanotti the Field Office Director for the Washington Field Office of USCIS, and Tae D. Johnson the Acting Director of ICE.

1

## I.     PROCEDURAL BACKGROUND

Petitioner filed an Emergency Petition for a Writ of Habeas Corpus and a Motion for an Order to Show Cause on January 13, 2023. Dkt. Nos. 1; 1-1. He subsequently filed an Emergency Motion for a Temporary Restraining Order or a Preliminary Injunction on January 17, 2023. Dkt. 3. The next day, Petitioner moved to withdraw his motions for a show cause order and a preliminary injunction, Dkt. 7, and moved for leave to file supplemental pleadings, Dkt. 8. This Court granted those Motions on January 25, 2023, Dkt. 9, and Petitioner filed his supplemental pleadings on February 3, 2023.

This Court then directed service of the Habeas Petition on Respondents on March 13, 2023, Dkt. 15, and Respondents filed a Motion to Dismiss for Lack of Jurisdiction with a supporting Memorandum on March 14, 2023, Dkt. Nos. 12; 13. After Magistrate Judge Davis extended Petitioner's time to respond, Dkt. Nos. 18; 23, Petitioner filed a Memorandum in Opposition on April 4, 2023, Dkt. 20. Respondents replied in support of their Motion on April 10, 2023. Dkt. 22. The Court then ordered the parties to submit briefs on the effect (if any) of *Axon Enterprise, Inc. v. F.T.C.*, 598 U.S. __, __ S. Ct. __ (2023). Dkt. 25. Respondents filed such a brief on April 25, 2023, and Petitioner filed his brief on May 19, 2023, Dkt. 28.

On July 10, 2023, this Court issued an Order granting in part and denying in part the Motion to Dismiss. Dkt. 29. The Court dismissed with prejudice the following Counts: (i) Count 1, which sought a declaratory judgment that Petitioner is a United States citizen; (ii) Counts 3 and 4 which were withdrawn by Petitioner; and (iii) Count 5, which was not a claim for relief but sought to explain why the Suspension Clause applied to Petitioner. *Id.* at 6. Thus, the only claim for relief remaining is Count 2, which brings a due process claim challenging Petitioner's detention on the ground that the government cannot detain American citizens. *Id.*

2

On July 19, 2023, the Court issued a Scheduling Order. Dkt. 31. On September 14, 2023, a briefing schedule for cross-motions for summary judgment issued. Dkt. 35. On September 19, 2023, the parties filed a Joint Stipulation of Facts for Summary Judgment Briefing. Dkt. 36. Also on September 19, 2023, Petitioner filed his Motion to Accept Late-Filed Motion and his Motion for Summary Judgment. Dkt. Nos. 37; 38. On October 18, 2023, Respondents filed their Opposition Brief and their own Motion for Summary Judgment. Dkt. Nos. 49; 50. On November 8, 2023, Petitioner filed his Opposition Brief and, on November 28, 2023, Respondents filed their Reply. Dkt. Nos. 53; 54. On December 12, 2023, Petitioner filed a Notice. Dkt. 56. On March 15, 2024, Petitioner filed a second Notice. Dkt. 57.

## II.   UNDISPUTED STATEMENT OF FACTS

Here, the parties have filed a joint statement of undisputed facts. Dkt. 36. Petitioner has also asserted his own statement of undisputed material facts to which Respondents have appropriately responded in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56. The Court draws its statement of undisputed facts from the joint statement of undisputed facts and from those statements of facts put forth by Petitioner which are truly undisputed.

1. Petitioner Mario Rene Lopez is a 42-year-old native of El Salvador, born out of wedlock on February 2, 1981. Petitioner's father was registered as his father on the birth certificate. Dkt. 36 ¶ 1.

2. Petitioner's parents never married each other. *Id.* ¶ 2.

3. When Petitioner was born in 1981, the Civil Code of El Salvador distinguished between (i) "legitimate children" conceived during the marriage or putative marriage of his parents; (ii) "illegitimate children" born outside of marriage; and (iii) "natural children who were illegitimate children acknowledged by their fathers. Dkt. Nos. 39 ¶ 12; 51 at 2 ¶ ii.

4. A child's status had two primary legal consequences. First, the mother had legal custody and responsibility for illegitimate and natural children. Second, the child's status affected his or her rights under the law of intestate succession. Dkt. Nos. 39 ¶ 13; 51 at 2 ¶ ii.

5. In 1983, El Salvador amended its constitution to provide children born in and out of wedlock with equal rights. Specifically, the amendments included the following provisions

3

   a. Article 21: "Laws cannot have retroactive effect, except in matters of public order, and in criminal matters when the new law is favorable to the offender."

   b. Article 36: "Children born within or outside of marriage, as well as adopted children, enjoy equal rights with regard to their parents. It is the obligation of parents to provide their children with protection, assistance, education, and security."

   c. Article 271: "The Legislative Assembly must harmonize, in accordance with this Constitution, the secondary laws of the Republic . . . ."

   Dkt. Nos. 39 ¶ 14; 51 at 2 ¶ ii; 39-6 (English translation of amendments to Salvadoran Constitution).

6. In 1994, the Salvadoran Family Code was passed, which provides that all children have the same family rights and duties. Dkt. Nos. 39 ¶ 17; 51 at 2 ¶ ii.

7. Petitioner's mother moved to the United States and was granted lawful permanent resident status in 1989. Dkt. Nos. 39 ¶ 3; 51 at 2 ¶ i.

8. Petitioner was admitted to the United States as a lawful permanent resident in 1992 when he was 11 years old, and he resided with his mother in the United States. Dkt. 36 ¶ 3.

9. Petitioner's mother, also a permanent resident at the time, became a naturalized U.S. citizen on January 30, 1998, when Petitioner was 16 years old. *Id.* ¶ 4.

10. In October 2004 and February 2005, respectively, Petitioner was convicted of Possession of a Schedule I or II Drug under Va. Code Ann. § 18.2-250 and Possession of a Controlled Drug with Intent to Distribute under Va. Code Ann. § 18.2-248. Petitioner was sentenced to 10 years of incarceration with nine years and four months suspended for the Possession conviction and 10 years of incarceration with four years suspended for the Possession with Intent to Distribute Conviction. Petitioner ultimately served approximately seven years of incarceration for these and other convictions. These convictions do not constitute Petitioner's entire criminal history; rather, they are the convictions that form the basis for the charges of removability. *Id.* ¶ 5 & n.2.

11. In 2009, a Immigration and Customs Enforcement ("ICE") agent met with Petitioner while he was serving his sentence and discussed Petitioner's citizenship with him. In his report, the ICE agent noted that, in the agent's opinion, Petitioner derived U.S. citizenship from his mother. Dkt. Nos. 43; 51 at 2 ¶ i.

12. On November 2, 2016, ICE, within the Department of Homeland Security ("DHS"), charged Petitioner with removability pursuant to 8 U.S.C. §§ 1227(a)(2)(B)(i) and 1227(a)(2)(A)(iii), for having been convicted of a controlled substance and drug trafficking offense after admission as a permanent resident. Dkt. 36 ¶ 8.

4

13. On or about January 30, 2018, Petitioner filed Form N-600, Application for Certificate of Citizenship, with the United States Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 6.

14. USCIS denied the N-600 Application on June 28, 2018. *Id.* ¶ 7.

15. During removal proceedings, the immigration judge found that Petitioner did not derive citizenship from his mother, that he did not meet his burden of proof for protection under the Convention Against Torture, and that he was deportable based on his earlier conviction under Va. Code Ann. §§ 18.2-248 and 18.2-250. *Id.* ¶ 9.

16. The immigration judge disagreed with Petitioner's arguments, denied all forms of relief, and ordered that Petitioner be deported. *Id.* ¶ 10.

17. Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals, which affirmed the judge's holdings and findings as to Petitioner's claims to citizenship and whether his convictions were deportable offenses. However, the Board remanded the case to the immigration judge for further analysis of his application under the Convention Against Torture. *Id.* ¶ 11.

18. The immigration judge entered a new decision in November 2022, again denying relief under the Convention Against Torture. *Id.* ¶ 12.

19. ICE subsequently took Petitioner into custody under 8 U.S.C. § 1231 on January 12, 2023, in order to execute the then administratively final order of removal. He is currently being held at the Caroline Detention Center in Bowling Green, Virginia. *Id.* ¶ 13.

20. At the time that Petitioner filed his Petition for Writ of Habeas Corpus (Dkt. 1), ICE had scheduled Petitioner's removal from the United States for Friday, January 20, 2023. Petitioner became aware of this schedule after filing the Petition. *Id.* ¶ 14.

21. Since January 2023, the parties have engaged in significant litigation at the administrative level. Currently, the merits of Petitioner's removal proceedings in immigration court in Annandale, Virginia have been reopened. The Immigration Judge ordered removal but granted deferral of removal under the Convention Against Torture. Both parties filed timely appeals of that decision to the Board of Immigration Appeals. *Id.* ¶ 15.

22. ICE may not execute removal of the Petitioner unless and until his removal order becomes administratively final. *Id.* ¶ 16.

23. Petitioner believes that the reopening of his removal case moots the third and fourth causes of action, which asked the Court to stay his deportation until the motion to reopen was adjudicated. *Id.* ¶ 17.[2]

24. Petitioner still asserts that his continued detention is unlawful, as alleged in the first, second, and fifth causes of action. *Id.* ¶ 18.[3][4]

### III. LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. "(A) party opposing summary judgment may not simply rest on the allegations of his complaint but must instead come forward with specific evidence showing the existence of a genuine issue of fact." *Muhammad v. Giant Food*, 108 F. App'x 757, 764 (4th Cir. 2004) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

The standard of review does not change when ruling on cross-motions for summary judgment. *E.I. DuPont De Nemours & Co. v. Ampthill Rayon Workers, Inc.*, 516 F. Supp. 2d 588,

---

[2] The Court includes this statement of fact because it was an agreed upon statement of fact. Dkt 36 ¶ 17. But the Court notes that the third and fourth causes of action have already been dismissed with prejudice. Dkt. 29 at 24 (dismissing Counts 1, 3, 4, and 5 with prejudice).

[3] The Court includes this statement of fact because it was an agreed upon statement of fact. Dkt 36 ¶ 18. But the Court notes that the first and fifth causes of action have already been dismissed with prejudice. Dkt. 29 at 24 (dismissing Counts 1, 3, 4, and 5 with prejudice).

[4] After this matter was fully briefed, the Board of Immigration Appeals affirmed the immigration judge's removal order (thereby denying Petitioner's appeal) and vacated the grant of Convention Against Torture protection (thereby granting the government's appeal). Dkt. 57.

593 (E.D. Va. 2007). When faced with cross-motions for summary judgment, a court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quotations omitted).

## IV. ANALYSIS[5]

The parties agree as to all of the material facts relevant to this dispute. Thus, the arguments on summary judgment hone in on the legal question regarding the effect of the 1983 change to the Salvadoran Constitution and whether it eliminated any distinction between legitimate and illegitimate children such that Petitioner was legitimated prior to his mother's 1998 naturalization and cannot claim derivative citizenship based on her naturalization. This Court finds, as other courts addressing this issue have, that the change to the Salvadoran Constitution legitimated Petitioner and he is therefore not entitled to derivative American citizenship. Accordingly, Petitioner's due process challenge in Count 2 fails because it was premised on Petitioner's status as an American citizen. Thus, Petitioner's Motion for Summary Judgment will be denied and Respondents' Motion for Summary Judgment will be granted.

The parties agree that, under former 8 U.S.C. § 1432(a)(3), a foreign national can claim derivative citizenship – and generally cannot be detained pending removal proceedings – if four elements are met: (i) he was born out of wedlock; (ii) his father did not establish paternity by legitimation; (iii) he was under the age of 18 when his mother became a naturalized U.S. citizen; and (iv) he was living in the United States as a legal permanent resident at the time of the mother's

---

[5] As an initial matter, the Court grants Petitioner's Motion to Accept his late-filed Motion for summary judgment, as it appears to be related to an error with the CM/ECF system.

7

naturalization. Dkt. Nos. 39 at 9-10; 49 at 4.[6] In particular, the statute required "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." 8 U.S.C. § 1432(a)(3). The parties further agree that to answer the question, whether there was legitimation, requires looking at the laws of El Salvador at the time Petitioner's mother was naturalized in 1998. *See* Dkt. 39 at 8 (discussing means of legitimation under El Salvadoran law); 49 at 1 (asserting sole question is whether there was legitimation under El Salvadoran law at the time Petitioner's mother was naturalized).

Where the parties differ is what constitutes legitimation under El Salvadoran law. Petitioner argues that the only way to be legitimized is for his parents to marry. Dkt. 39 at 8 ("Mr. Lopez's mother and father never married, and thus never legitimized Mr. Lopez."). Respondents argue that the 1983 constitutional amendments "legally established Petitioner as the legitimate son of his father, whose name also appears on Petitioner's birth certificate as his biological father, even though he was born out of wedlock." Dkt. 49 at 1-2. As this is a habeas petition, Petitioner bears the burden of proving entitlement to relief. *See, e.g., Garlotte v. Fordice*, 515 U.S. 39, 46 (1995); 8 C.F.R. § 341.2(c) (2018) ("The burden of proof shall be upon the claimant . . . to establish the claimed citizenship by a preponderance of the evidence.").

Petitioner would have this Court interpret § 1432 in a vacuum. Dkt. 39 at 10-13. Although the Fourth Circuit does not appear to have addressed this precise issue, courts of appeals have consistently recognized that "legitimation" occurs when a foreign nation amends its laws to put "a child born out of wedlock in the same legal position as a child born in wedlock." *Miranda v.*

---

[6] 8 U.S.C. § 1432 "was repealed by Section 103 of the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631, 1632-33 (2000)." *Suarez v. Ashcroft*, 69 F. App'x 184, 185 n.2 (4th Cir. 2003). That 2000 Act did not apply retroactively; accordingly, Petitioner's claim to derivative citizenship is properly premised on § 1432, as he turned 18 before 2000.

8

*Sessions*, 853 F.3d 69, 74 (1st Cir. 2017) (finding legitimation occurred when Cape Verde "abolished the legal distinction between legitimate and illegitimate children in 1976"); *Brandao v. Att. Gen'l of U.S.*, 654 F.3d 427, 430 (3d Cir. 2011) (finding, again with respect to Cape Verde, that "every such child is legitimated regardless of whether the natural father takes formal steps to assert paternity"); *Colin-Villavicencio v. Garland*, 108 F.4th 1103, 1113 (9th Cir. 2024) (holding that "statutes abolishing the distinction between legitimate and illegitimate children suffice to meet the requirement of 'legitimation'"); *De Los Santos v. INS*, 690 F.2d 56, 59 (2d Cir. 1982) ("[T]he INS's interpretation of 'legitimated' as requiring the acquisition of rights coextensive with those of a legitimate child is consistent with the language of the Act."); *Lou v. Kiley*, 563 F.2d 543, 551 (2d Cir. 1977) ("Because we conclude that Chinese law makes all children 'legitimate,' we need not consider the secondary question of whether there is a procedure in China for 'legitimizing' a child."). As one district court explained, "[a]s laws governing the legitimacy and legitimation of children have evolved, however, an 'act' legitimating the child – such as acknowledging paternity or the marriage of the parents – is not necessarily required.  Instead, jurisdictions could confer legitimacy without the need for formal action." *United States v. Simpson*, 929 F. Supp. 2d 177, 185 (E.D.N.Y. 2013) (internal citations and quotations omitted).  Thus, courts have concluded that individuals become "legitimate" where the law of the relevant jurisdiction "made all children legitimate." *Id.*  These rulings recognize the "important government objective allowing single parent derivative citizenship *while protecting the rights of alien parents* by limiting circumstances in which it (derivative citizenship) can occur." *Brandao*, 654 F.3d at 429 (emphasis added) (holding that the statute's objective is to "provide the broadest protection for the alien parent's rights").

9

Applying this authority here, the 1983 Amendments to the Salvadoran Constitution made all children "born within or outside of marriage" equal and provided them "equal rights with regard to their parents." Dkt. 39-6. The 1994 Salvadoran Family Code provides that paternity is established by "a voluntary acknowledgment or by legal statement." Dkt. 39-8. The 1994 Salvadoran Family Code further provides that "[a]ll children, regardless of their filiation nature, have the same family rights and duties." *Id.* Thus, at the time Petitioner's mother was naturalized, El Salvador had removed any distinction between legitimate and illegitimate children and provided that the presence of Petitioner's father on his birth certificate was sufficient to establish paternity. In these circumstances, this is sufficient to demonstrate that Petitioner does not qualify for derivative citizenship because, at the time of his mother's naturalization, his paternity had been established by legitimation.

Petitioner argues that following this authority deprives the statute of its ordinary meaning by divorcing paternity from the phrase "by legitimation." Dkt. 53 at 10. The only case which Petitioner cites in support of this proposition, however, is *Flores-Torres v. Holder*, 680 F. Supp. 2d 1099 (N.D. Cal. 2009). Concededly, the *Flores-Torres* Court reached a different result than that reached here with respect to the effect of El Salvadoran laws. That court's decision would limit legitimation to circumstances where a mother and father married after a child was born. *Id.* at 1105 ("Put differently, if a father married the mother, then the paternity was established by legitimation and such a father would have parental rights."). In so doing, the *Flores-Torres* Court found, without reliance on any explicit agreement, ruling or other document from El Salvador, that "[b]y *implicit* agreement" all of the "unwed father's parental rights were terminated" such that there was no paternal/child relationship that Congress would want to protect. *Id.* at 1106 (emphasis added). Respectfully, this Court finds no support for any finding that parental rights are implicitly

terminated where there is an unwed father who has signed the birth certificate and where Salvadoran law provides that this is sufficient to establish paternity and has eliminated a distinction between legitimate and illegitimate children.

Additionally, *Flores-Torres* was decided in 2010 – well before the majority of the court of appeals' decisions relied upon here were decided. Indeed, the *Flores-Torres* decision is out of step with Ninth Circuit authority that would now be binding on it. The parties spend much of their time debating the applicability of the Ninth Circuit's decision in *Romero-Mendoza v. Holder*, 665 F.3d 1105 (9th Cir. 2011).[7] Although not central to its holding regarding the lack of derivative citizenship in that case, the *Romero-Mendoza* Court recognized: "When legal distinctions are eliminated between children born to married parents and those born out of wedlock, the children born out of wedlock are deemed to be legitimated as of the date the laws are changed." *Id.* at 1109. More recently, however, the Ninth Circuit held, in the context of a petitioner from Mexico claiming derivative citizenship, that the father's signature on the birth certificate was sufficient to establish paternity and that such paternity was legitimated where the Baja California Civil Code provides that "all children have equal rights regardless of whether they were born within a union not by marriage or within a marriage." *Colin-Villavicencio*, 108 F.4th at 1113-14. These cases together suggest that, were *Flores-Torres* to be decided today, it would come out differently. Indeed,

---

[7] In *Romero-Mendoza*, the Ninth Circuit also addressed the application of Salvadoran law in the context of derivative citizenship. There, however, the petitioner's parents married after his birth. The Ninth Circuit rejected petitioner's argument: (i) that his father's name on his birth certificate did not suffice to establish paternity; and (ii) that "legitimation is a legal impossibility in countries that have eliminated legal distinctions between children born to married parents and those born out of wedlock." 665 F.3d at 1108-09. Ultimately, the Ninth Circuit held that the petitioner had failed to establish derivative citizenship. *Id.* at 1110.

11

*Flores-Torres* was cited by the dissent in *Colin-Villavicencio*. 108 F.4th at 1125 (Fletcher, J., dissenting).

Furthermore, following Petitioner's proposed construction of the statute would obviate the need to examine the foreign nation's laws. Under Petitioner's construction of § 1432, all that would matter is whether the father has recognized the child and whether the father subsequently married the mother sometime after the child's birth but before the mother's naturalization. But, if Congress meant to require a later marriage between the parents, surely the statute would simply refer to a later marriage. Indeed, courts of appeals have expressly rejected the marriage requirement put forward by Petitioner. *See Miranda*, 853 F.3d at 75 (noting that "Miranda's argument that his parents would have had to intermarry before his father acknowledged him is unavailing" and finding that petitioner lacked derivative citizenship because under each of the three proposed jurisdictions' laws the elimination of a distinction between legitimate and illegitimate children and the acknowledgement of the petitioner by his father was sufficient to establish paternity by legitimation).

In sum, because the facts regarding Petitioner's parentage and the changes to the law in El Salvador are undisputed, this Court finds, as a matter of law, that Petitioner did not have derivative citizenship based on his mother's naturalization. The 1983 amendments to the Salvadoran Constitution in combination with the 1994 Family Code – each of which occurred well before Petitioner's mother was naturalized – as well as his father's acknowledgment on Petitioner's birth certificate demonstrate paternity by legitimation. This afforded Petitioner's father certain rights vis-à-vis Petitioner and Petitioner certain rights vis-à-vis his father. Thus, there was a relationship between Petitioner and his father that Congress intended to protect, which results in an inability to

claim derivative citizenship, in order to prevent the undermining of parental rights by the naturalization of the mother.

## V. CONCLUSION

Petitioner's sole remaining cause of action, Count 2, is premised on the due process clause and ICE's inability to detain American citizens. Because this Court finds that Petitioner is not entitled to derivative citizenship from his unwed mother as he was legitimated under the laws of El Salvador before her naturalization, this Court finds, as a matter of law, that Count 2 fails. Therefore, Petitioner's Motion for Summary Judgment will be denied, and Respondents' Motion for Summary Judgment will be granted.

Accordingly, it is hereby ORDERED that the Motion to Accept (Dkt. 37) is GRANTED; and it is

FURTHER ORDERED that Petitioner's Motion for Summary Judgment (Dkt. 38) is DENIED; and it is

FURTHER ORDERED that Respondents' Motion for Summary Judgment (Dkt. 50) is GRANTED; and it is

FURTHER ORDERED that the Clerk of Court is DIRECTED to enter Rule 58 judgment in favor of Respondents and against Petitioner; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to place this matter among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
September 25, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge

13